UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JAMES TENNIER; LOIS TENNIER, | |
| Plaintiffs, | 3:14-cv-0035-LRH-VPC |
| v. | |
| WELLS FARGO BANK, N.A.; et al., | ORDER |
| Defendants. | |

Before the Court is Defendant Wells Fargo Bank, N.A.'s ("Wells Fargo") Motion for Summary Judgment. Doc. #27.[1] Plaintiffs James and Lois Tennier ("the Tenniers") filed an Opposition (Doc. #28), to which Wells Fargo Replied (Doc. #29).

**I.    Facts and Background**

In December 2007, the Tenniers refinanced their existing home loan and entered into an Option Adjustable Rate Mortgage ("ARM") agreement with World Savings Bank, FSB ("WSB") as part of WSB's "Pick-a-Payment" loan program. Doc. #1, Ex. 6 ¶18. Eventually, the Tenniers defaulted on the refinanced loan and Wells Fargo, WSB's successor-in-interest, recorded a notice of default on the property. *Id.* ¶2.

The Tenniers allege that the ARM loan "was sold based upon a low, fixed interest rate, when in fact Plaintiffs were charged a different, much greater interest rate than the rate upon which

---

[1] Refers to the court's docket number.

the payment amounts listed in the [Truth in Lending Disclosure Statement ("TILDS")] were based." *Id.* ¶20.  During the negotiations, WSB allegedly "failed to disclose, and by omission, failed to inform Plaintiffs that Defendants' Option ARM loan was designed to, and did, cause negative amortization to occur." *Id.* ¶21.  The Tenniers also allege that WSB "represented to Plaintiffs that in accepting these loan terms they would be able to lower their mortgage payment and save money," and that as a result of these representations, the Tenniers agreed to finance their home with WSB's ARM loan. *Id.* ¶¶24-25.  Although the Tenniers believed that the interest rate provided in the ARM loan Note and TILDS would be sufficient to cover principal and interest, the Tenniers state that "the payment schedule provided by Defendants was guaranteed to be insufficient to pay off all of the interest due, let alone both principal and interest, which was absolutely to result in negative amortization." *Id.* ¶26.  The Note states that "[f]rom time to time, my monthly payments may be insufficient to pay the total amount of monthly interest that is due.  If this occurs, the amount of interest that is not paid each month, called 'Deferred Interest,' will be added to my Principal and will accrue interest at the same rate as the Principal." Doc. #27, Ex. 6 at 3.  The effective interest rate for the Tenniers' loan payments through the first 108 months ranged from 4.55% to 7.23%. Doc. #28 at 6.  The Annual Percentage Rate ("APR") listed for the loan was 7.267%. Doc. #27, Ex. 11 at 1.

The Tenniers believed that they would be able to refinance and get a new loan before their scheduled payments increased, but the bank "failed to disclose, and by omission, failed to inform Plaintiffs that due to the negative amortization that was purposefully built into these loans, Plaintiffs would be unable to refinance their homes as there would be little or no equity left to refinance." Doc. #1, Ex. 6 ¶27.  The Tenniers argue that at all relevant times, the bank "knew or should have known" that the Tenniers' payments were insufficient to pay both the principal and interest on their home, and that their payments would cause the Tenniers to lose their equity in their home. *Id.* ¶¶37-38.  The Tenniers allege that in the spring of 2009, they were told to stop making payments in order to be eligible for a loan modification. Doc. #28 at 7.

The Tenniers filed a Complaint against Defendants in state court on December 6, 2013. Doc. #1, Ex. 1. The Tenniers then filed an Amended Complaint on December 26, 2013 (Doc. #1, Ex. 2), and a Second Amended Complaint ("SAC") on January 9, 2014 (Doc. #1, Ex. 6). The SAC alleges six causes of action against defendants: (1) fraudulent omissions; (2) breach of contract; (3) breach of the implied covenant of good faith and fair dealing; (4) unjust enrichment; (5) deceptive trade practice against elderly person; and (6) deceptive trade practice against a person with a disability. *Id*. Doc. #1, Ex. 6.

On January 15, 2014, Wells Fargo removed the Complaint to federal court on the basis of diversity jurisdiction. Doc. #1. Thereafter, Wells Fargo filed a Motion to Dismiss (Doc. #3), which the Court granted in part and denied in part (Doc. #16). Specifically, the Court dismissed the Tenniers' fourth claim for unjust enrichment and denied Wells Fargo's motion as to the other five claims. Doc. #16 at 6. Wells Fargo filed the present Motion for Summary Judgment on the remaining claims on August 18, 2014. Doc. #27.

**II.    Legal Standard**

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, affidavits or declarations, stipulations, admissions, and other materials in the record show that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Cnty. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001). A motion for summary judgment can be complete or partial, and must identify "each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a).

The party moving for summary judgment bears the initial burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material

1  fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the
2  burden of proof, the moving party must make a showing that no "reasonable jury could return a
3  verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). On
4  an issue as to which the nonmoving party has the burden of proof, however, the moving party can
5  prevail merely by demonstrating that there is an absence of evidence to support an essential element
6  of the non-moving party's case. *Celotex*, 477 U.S. at 325.

7  To successfully rebut a motion for summary judgment, the nonmoving party must point to
8  facts supported by the record that demonstrate a genuine issue of material fact. *Reese v. Jefferson*
9  *Sch. Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000). A "material fact" is a fact "that might affect
10 the outcome of the suit under the governing law." *Liberty Lobby*, 477 U.S. at 248. Where
11 reasonable minds could differ on the material facts at issue, summary judgment is not appropriate.
12 *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered
13 genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving
14 party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of
15 the party's position is insufficient to establish a genuine dispute; there must be evidence on which a
16 jury could reasonably find for the party. *See id.* at 252. "[S]peculative and conclusory arguments
17 do not constitute the significantly probative evidence required to create a genuine issue of material
18 fact." *Nolan v. Cleland*, 686 F.2d 806, 812 (9th Cir. 1982).

19 In determining whether to grant or deny summary judgment, it is not a court's task "to scour
20 the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th
21 Cir. 1996) (internal quotation marks omitted). Rather, a court is entitled to rely on the nonmoving
22 party to "identify with reasonable particularity the evidence that precludes summary judgment." *Id.*

23 **III.   Discussion**

24 Following the Court's Order granting in part and denying in part Wells Fargo's Motion to
25 Dismiss, five causes of action remain: (1) fraudulent omissions; (2) breach of contract; (3) breach
26 of the implied covenants of good faith and fair dealing; (5) deceptive trade practice against elderly

4

person; and (6) deceptive trade practice against a person with a disability.  The Court considers each cause of action in turn.

**A.  Fraudulent Omissions**

Wells Fargo argues that the Tenniers cannot establish a claim for relief based on fraudulent omissions because no fraud occurred, and any claim of fraud is time-barred.  Doc. #27 at 6.  Under Nevada law, a fraud claim can be established by the following elements:

> A false representation made by the defendant, knowledge or belief on the part of the defendant that the representation is false-or, that he has not a sufficient basis of information to make it, an intention to induce the plaintiff to act or to refrain from acting in reliance upon the misrepresentation, justifiable reliance upon the representation on the part of the plaintiff in taking action or refraining from it, and damage to the plaintiff, resulting from such reliance.

*Lubbe v. Barba*, 540 P.2d 115, 117 (Nev. 1975) (quoting Prosser, Law of Torts, 685 (4th ed. 1971)).  "It is well-settled under Nevada law that suppression or nondisclosure of a material fact, which a party is bound in good faith to disclose, is equivalent to a false representation." *Nev. Power Co. v. Monsanto Co.*, 891 F. Supp. 1406, 1420 (D. Nev. 1995) (citing *Villalon v. Bowen*, 273 P.2d 409, 414 (Nev. 1954); *Midwest Supply Inc. v. Waters*, 510 P.2d 876, 878 (Nev. 1973)).  When a party with a fiduciary duty to another fails to inform an individual of a failure to fulfill obligations, "his omission constitutes constructive fraud, tolling the statute of limitations until the facts constituting the fraud are discovered, or should have been discovered, by the injured party." *Golden Nugget, Inc. v. Ham*, 589 P.2d 173, 175 (Nev. 1979).

Wells Fargo argues that the first element of fraud—false representation—cannot be established because based on the plain language of the Note, the Tenniers were on notice of the potential for changed interest rates and that monthly payments might not pay off all interest due.  The Note states, in relevant part:

> **(B) Amount of My Initial Monthly Payments**
> Each of my initial monthly payments will be in the amount of US $1,337.87. This amount will change as described in Sections 3(C) and 3(D) below. My initial monthly payment amount was selected by me from a range of initial payment amounts approved by Lender and may not be sufficient to pay the entire amount of interest

accruing on the unpaid Principal balance. . . .

**(E) Deferred Interest; Additions to My Unpaid Principal**
From time to time, my monthly payments may be insufficient to pay the total amount of monthly interest that is due. If this occurs, the amount of interest that is not paid each month, called 'Deferred Interest,' will be added to my Principal and will accrue interest at the same rate as the Principal.

Doc. #27, Ex. 6 at 2-3. In addition to signing this Note, the Tenniers signed a Deferred Interest Acknowledgment ("DIA"), which states that they could incur deferred interest[2] that would increase the principal balance of the loan if they made a payment less than the interest owed. *Id.*, Ex. 7 at 1. In fact, the DIA explicitly states that the loan "lets you choose how much to pay each month from among several choices on your billing statement" and that if a periodic payment "is less than the interest owing on the loan, you will incur deferred interest and the principal balance of your loan will increase." *Id.* Wells Fargo argues that these documents "indisputably show that [the] Plaintiffs received the various disclosures they allege in the SAC that they did not receive," which indicates that no false representation occurred. Doc. #27 at 11.

The Tenniers argue that genuine issues of material fact remain as to whether Defendants defrauded the Tenniers by omissions. As evidence of Defendants' fraud by omission, the Tenniers refer to the SAC and an affidavit by Plaintiffs' expert Kevin Kirkendall ("Kirkendall"). Doc. #28 at 10. Among other findings, Kirkendall stated in his affidavit that at the interest rate of 7.267%, "negative amortization was certain to occur as alleged." Doc. #28, Ex. 1 ¶5. Kirkendall also states that the portion of the Note describing the potential for deferred interest is "largely inaccurate" because "the noted amortization schedule indicates that all payments from the beginning of the loan up through . . . a period of 108 months, would, with certainty, have not been sufficient to pay the total amount of monthly interest due," and that the Note was "wholly inaccurate" with respect to payments through January 15, 2017. *Id.*

---

[2] The Acknowledgment defines deferred interest as follows: "Deferred interest (also known as negative amortization) occurs if your mortgage payment is not large enough to pay all of the scheduled interest due on your loan. . . . In subsequent months, you will be charged interest on the higher principal balance." Doc. #27, Ex. 7 at 1.

6

The Truth in Lending Act ("TILA")[3] is intended "to ensure that users of consumer credit are informed as to the terms on which credit is offered them." *Jones v. E\*Trade Mortg. Corp.*, 397 F.3d 810, 812 (9th Cir. 2005) (citing 15 U.S.C. § 1601). Under TILA, a variable-rate mortgage must include "[a] loan program disclosure for each variable-rate program" provided to the consumer. 12 C.F.R. § 226.19(b)(2). This notice must disclose: (1) that the interest rate, payment, or term of the loan can change; (2) the index used for making adjustments; (3) an explanation of how the interest rate and payment is determined; (4) a statement that the consumer should inquire about the current interest rate; (5) the fact that the interest rate can be discounted; (6) the frequency of interest rate and payment changes; (7) "[a]ny rules relating to changes in the index, interest rate, payment amount, and outstanding loan balance including, for example, an explanation of interest rate for payment limitations, negative amortization, and interest rate carryover"; (8) either a historical example of how payments would be changed by an interest rate change or the maximum interest rate and payment for a $10,000 loan; (9) an explanation of how the consumer can calculate the payments; (10) that the loan contains a demand feature; (11) the type of information provided in notices of adjustments; and (12) a statement that disclosure forms are available for the creditor's other variable loan programs. *Id.* § 226.19(b)(2)(I)-(xii). "If a consumer is given the option to cap monthly payments that may result in negative amortization, the creditor must fully disclose the rules relating to the option, including the effects of exercising the option (such as negative amortization will occur and the principal loan balance will increase)." 12 C.F.R. § 226, Supp. I., 19(b)(2)(vii)-2.

In *Davis v. Wells Fargo Bank*, the Ninth Circuit held that it was appropriate for the district court to grant summary judgment on a TILA claim because the bank's disclosure of negative amortization "was set out in the note itself and in the loan disclosure." 534 Fed. Appx. 601, 602

---

[3] The Tenniers stated in their opposition to Wells Fargo's Motion to Dismiss that they did not bring suit pursuant to TILA. Doc. #6 at 5. The TILA requirements are listed here because they are relevant to whether Defendants fulfilled their obligation to provide the Tenniers certain information regarding the loan and the potential for deferred interest.

(9th Cir. 2013). Specifically, the note stated that "when the monthly payment was less than the interest that had accrued, the difference would add to the principal." *Id.* The loan disclosure explained further that the "negative amortization would begin with the first monthly payment (if only the *required* payment was made) and subsequently would occur when monthly payments were less than accrued interest." *Id.* at 603. The Note here states that the initial payments of $1337.87 "may not be sufficient to pay the entire amount of interest accruing on the unpaid Principal balance." Doc. #27, Ex. 6 at 2. The Note adds that "[f]rom time to time, my monthly payments may be insufficient to pay the total amount of monthly interest that is due. If this occurs, the amount of interest that is not paid each month, called 'Deferred Interest,' will be added to my Principal and will accrue interest at the same rate as the Principal." *Id.* at 3. The Tenniers' DIA defines the term and states that each loan statement "will identify any outstanding deferred interest" so that the Tenniers can monitor the status of their deferred interest and choose to reduce the amount. *Id.*, Ex. 7 at 2. Between the Note, Acknowledgment, and Pick-a-Payment Loan Program Disclosure, the documents that WBS provided to the Tenniers include all of the required disclosures described in 12 C.F.R. § 226.19(b)(2), and the Tenniers therefore cannot establish false representation.

The Tenniers argue that Defendants "should have known" that the Note would cause negative amortization because "[a]t the noted interest rate of 7.267%, negative amortization was certain to occur as alleged as is demonstrated by reference to the noted amortization schedule." Doc. #28 at 6; Doc. #28, Ex. 1 ¶5. The TILDS stated that the APR of the loan would be 7.267%, and the Tenniers acknowledge that the effective annual interest rate ranged from 4.55% to 7.23% during the first 108 months of the loan. Doc. #28, Ex. 1 ¶5. Kirkendall's amortization schedule confirms his statement that the Tenniers' initial minimum payments were certain to cause negative amortization through January 15, 2017. *See* Doc. #28, Ex. 2 at 11-12. However, the Tenniers have admitted that they chose the amount of their initial payments, and that they had the option to choose higher payments that potentially would have covered the interest for each pay period. Doc. #27,

8

Ex. 1 at 5:24-6:2; Ex. 2 at 4:26-5:6; Ex. 8. Defendants cannot be expected to disclose that negative amortization would be *certain* based on a payment schedule chosen by individuals accepting a loan, and fulfilled their disclosure obligations by stating that negative amortization *could* occur if payments did not cover accrued interest, and then permitting the Tenniers to choose the amount of their initial loan payments.

Based on the foregoing, the language in the Note is unambiguous that the loan is an "adjustable rate mortgage note," that the interest rate could change, and that any monthly payment that did not cover the amount owed could be added to the principal as deferred interest. *See* Doc. #27, Ex. 6 at 1-3. The Court therefore finds that no reasonable juror could find, in light of the many disclosures of the potential for deferred interest and that such interest could be added to principal, that Defendants engaged in false representations about the interest rate to be charged. Because false representation is an essential element of the Tenniers' fraud claim, the Court grants Wells Fargo's Motion for Summary Judgment as to the fraudulent omission claim.[4]

### B. Breach of Contract

Wells Fargo argues that the Tenniers cannot show any genuine dispute of material fact as to their claim for breach of contract because they cannot establish all three elements of breach of contract: "(1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach." *Saini v. Int'l Game Tech.*, 494 F. Supp. 3d 913, 919-20 (D. Nev. 2006). Neither party disputes the existence of a valid dispute between the parties, and the damage to the Tenniers is the negative amortization that led to their failure to pay and ultimately this foreclosure action. However, the parties dispute whether a breach of the contract occurred, and if so, which party breached first. The Tenniers argue that "Defendants expressly and/or through their conduct and actions agreed that Plaintiffs' monthly payment obligations would be sufficient to pay both the principal and interest owed on the loans. Defendants breached this agreement by failing to apply

---

[4] The Court need not consider the Tenniers' statute of limitations argument in light of the Court's finding that the Tenniers could not prevail on this claim even if the statute of limitations were met.

any of Plaintiffs' payments to principal." Doc. #1, Ex. 6 ¶60.  Wells Fargo argues that "it cannot be said that any breach of contract occurred based on any alleged failure by Wells Fargo to disclose" because "the Note signed by the Plaintiffs accurately reflects the terms of the legal obligations between the parties." Doc. #27 at 18.

Wells Fargo notes that the Tenniers' breach of contract claim exhibits a fundamental misunderstanding of the law underlying their loan.  The SAC states that the "interest rate listed in the Note and in the TILDS was not used to calculate the payment amounts stated in the Note and listed in the TILDS." Doc. #1, Ex. 6 ¶59.  Wells Fargo argues that this is important because "TILDS forms do not list interest rates," and instead list an APR.  Doc. #27 at 17 (emphasis omitted) (citing *Velazquez v. GMAC Mortg. Corp.*, 605 F. Supp. 2d 1049, 1062 (C.D. Cal. 2008) ("APR and interest rate are distinct.")).  Moreover, Wells Fargo argues that the legal obligation created by the loan documents is for the Tenniers to pay the minimum payment each month, and that the bank has fulfilled its obligation to disclose material information regarding the loan. *Id.* at 18.  In *Conder v. Home Savings of America*, for example, the court found that the plaintiff had an obligation to make minimum payments, but not "to make monthly payments sufficient to fully amortize the loan for the first few years." 680 F. Supp. 2d 1168, 1173 (C.D. Cal. 2010).  The court rejected plaintiff's argument that the defendant had breached a contract by disclosing a payment schedule that included payments that were "less than would be required to amortize the loan." *Id.*  The Court finds *Conder* persuasive, and that Defendants did not fail to include material disclosures regarding the contract simply because the payment schedule included initial payments that were less than required to fully amortize the loan.

As evidence of Defendants' breach of contract, the Tenniers refer only to the SAC and the Kirkendall affidavit, which discusses Defendants' alleged fraudulent omissions but does not directly address their breach of contract claim.  Doc. #28 at 11.  In another foreclosure case, the court granted summary judgment on the defendant's breach of contract claim because the plaintiff did not present evidence or "facts regarding alleged non-compliance with the original mortgage

agreement." *Prince v. U.S. Bancorp Nat'l Ass'n*, No. 2:09-cv-1095, 2011 WL 1099124, at *3 (D. Nev. Mar. 21, 2011). Without such evidence, the court granted defendant's motion for summary judgment because evidence presented by the plaintiff was "conclusory and lack[ed] detail." *Id.*

Similarly, the Tenniers have failed to produce any evidence to create genuine issues of material fact regarding Defendants' alleged breach of contract, and the SAC and affidavit to which they refer are conclusory and lacking in detail. Accordingly, the Court grants Wells Fargo's Motion for Summary Judgment on the Tenniers' breach of contract claim.

### C. Implied Covenant of Good Faith and Fair Dealing

The covenant of good faith and fair dealing means "that each party impliedly agrees not to do anything to destroy or injure the right of the other to receive the benefits of the contract." *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 808 P.2d 919, 923 (Nev. 1991) (quoting jury instructions). "When one party performs a contract in a manner that is unfaithful to the purpose of the contract and the justified expectations of the other party are thus denied, damages may be awarded against the party who does not act in good faith." *Id.* "[G]ood faith is a question of fact." *Consol. Generator-Nev., Inc. v. Cummins Engine Co., Inc.*, 971 P.2d 1251, 1256 (Nev. 1998) (denying summary judgment on implied covenant of good faith claim because the court had found genuine issues of material fact as to other contract-based claims). However, "when there is no factual basis for concluding that [a defendant] acted in bad faith, a court may determine the issue of bad faith as a matter of law." *Andrew v. Century Sur. Co.*, No. 2:12-cv-0978, 2014 WL 1764740, at *10 (D. Nev. Apr. 29, 2014) (citing *Am. Excess Ins. Co. v. MGM Grand Hotels, Inc.*, 729 P.2d 1352, 1355 (Nev. 1986)).

Wells Fargo argues that the Tenniers' claims for breach of the implied covenant of good faith and fair dealing must fail because the Tenniers received the benefits of the contract when Defendants procured the $350,000 loan. Doc. #27 at 19. Wells Fargo adds that the Tenniers "were fully aware of the repayment schedule," which was included in the TILDS form that the Tenniers admitted to signing. *Id.* The Tenniers argue that genuine issues of material fact exist because "the

payments amounts listed in the TILDS were not based on the actual interest rate charged in the Note," and the Note did not discuss the strong potential for negative amortization, or that the payment amounts would be insufficient to pay interest and principal. Doc. #28 at 11-12.

To support their claim for breach of the covenant of good faith and fair dealing, the Tenniers refer to allegations in the SAC and Kirkendall affidavit. Doc. #28 at 11. The SAC states that "Defendants have knowingly and willfully breached the implied covenant of good faith and fair dealing by engaging in the acts and/or fraudulent omissions to mislead and/or deceive Plaintiffs." Doc. #1, Ex. 6 ¶73. The SAC alleges further that Defendants, in bad faith, "foisted upon Plaintiffs a loan that was guaranteed to result in negative amortization." *Id.* ¶71. Besides these allegations, the Tenniers have not produced evidence regarding Defendants' supposed bad faith, nor does the Kirkendall affidavit specifically refer to such bad faith. *See Forouzan, Inc. v. Bank of George*, No. 56337, 2012 WL 642548, at *6 (Nev. Feb. 27, 2012) (finding that "general allegations do not create a genuine issue of material fact as to whether [defendant] breached the covenant of good faith and fair dealing); *Ruggieri v. Hartford Ins. Co. of the Midwest*, No. 2:13-cv-0071, 2013 WL 2896967, at *4 (D. Nev. June 12, 2013) (holding in an insurance case that "Plaintiff's mere allegation that Defendant denied coverage is insufficient to state a claim for the tortious breach of the implied covenant of good faith and fair dealing"). Accordingly, the Court grants Wells Fargo's Motion for Summary Judgment as to the Tenniers' breach of the implied covenant of good faith and fair dealing claim. *See Celotex Corp.*, 477 U.S. at 325 (finding that "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case"); *Rodriguez v. Primadonna Co., LLC*, 216 P.3d 793, 798 (Nev. 2009) ("General allegations supported with conclusory statements fail to create issues of fact.").

**D. Deceptive Trade Practices**

Wells Fargo argues that the Tenniers' claims for deceptive trade practices against an elderly person and a person with a disability must fail because the actions are time barred, no confidential relationship existed between the Tenniers and Defendants, and the Tenniers have produced no

12

evidence to support these claims. Doc. #27 at 20-22. The Tenniers dispute these claims, and state that they have produced evidence to support their deceptive trade practices claims. Doc. #28 at 13.

The Nevada Deceptive Trade Practices Act ("DTPA") states that "[a]n action may be brought by any person who is a victim of consumer fraud" as defined by NRS § 598.0915 to NRS § 598.0925. NRS § 41.600. "To establish a violation of the DTPA, the plaintiff must demonstrate that (1) an act of consumer fraud by the defendant (2) caused (3) damages to the plaintiff." *Sobel v. Hertz Corp.*, 698 F. Supp. 2d 1218, 1230 (D. Nev. 2010). "A person engages in a 'deceptive trade practice' when in the course of his business or occupation he knowingly: . . . 2. Fails to disclose a material fact in connection with the sale or lease of goods or services. . . . [or] 3. Violates a state or federal statute or regulation relating to the sale or lease of goods or services." NRS § 598.0923. An individual can also be held liable under the DTPA if he "[k]nowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale or lease." NRS § 598.0915.

The Tenniers refer to the SAC and Kirkendall affidavit as evidence of deceptive trade practices. Doc. #28 at 13. The SAC states that "Defendants intentionally and fraudulently misled the Plaintiffs regarding the type of interest rate they would receive by knowingly making false representations to Plaintiffs about the nature of the loan on the Note and the TILDS." Doc. #1, Ex. 6 ¶82. Kirkendall states in his affidavit that the portion of the Note disclosing the potential for deferred interest was "largely inaccurate" because it did not state that some payments would "with certainty, have not been sufficient to pay the total amount of monthly interest due." Doc. #28, Ex. 1 ¶5. In response to the allegation that "Defendants aggressively sold their product as a fixed rate low interest home loan," Kirkendall states that he "can obviously not comment concerning the manner in which the Defendants sold the subject home loan." *Id.*, Ex. 2 at 10.

The Court finds that based on these allegations, no reasonable juror could find that Defendants engaged in deceptive trade practices or that the Note was advertised as a fixed rate low interest loan. The Note describes the loan as an "adjustable rate mortgage" and states in numerous

places specifics regarding how changes in the interest rate could be calculated.  *See* Doc. #27, Ex. 6 at 1-2.  In *Sobel*, this Court held that summary judgment was appropriate on a DTPA claim because although the defendant Hertz did not specifically inform consumers of all fees associated with a car rental, consumers were aware of the total price of the car rental, which included the fee at issue. 698 F. Supp. 2d at 1231.  Similarly, the Tenniers signed the Note and DIA, which each specifically stated the potential for deferred interest and negative amortization, and that this could increase the principal owed.  Doc. #27, Ex. 6 at 2-3; Ex. 7 at 1.  Because all charges and fees were disclosed, the Tenniers cannot establish that Defendants intentionally omitted material facts in their loan agreement, or that Defendants otherwise engaged in deceptive trade practices.  *See* NRS § 598.0923.  Accordingly, the Court grants Wells Fargo's Motion for Summary Judgment as to the Tenniers' deceptive trade practices claims.

## IV.     Conclusion

IT IS THEREFORE ORDERED that Wells Fargo's Motion for Summary Judgment (Doc. #27) is GRANTED.

IT IS FURTHER ORDERED that the clerk shall enter Judgment accordingly in favor of Defendants and against Plaintiffs.

IT IS SO ORDERED.

DATED this 8th day of January, 2015.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE